By the Court :
Several points have been made and argued in this case, which we deem it unnecessary to examine or decide. Most of these involve matters interesting to persons not parties to the case, which must necessarily arise and be determined in suits now pending for property to a large amount. Until those parties are fully heard, we wish to form no opinion that may affect their rights where it *239 is not necessary to decide the case before ns. And it is not necessary to do so in this case.
It is contended for the defendant that the court erred in’ instructing the jury that the possessory title given in evidence by the lessor of the plaintiff, was sufficient to warrant a verdict for the plaintiff in the absence of all proof of title to the premises in the defendant. The correctness of this instruction depends upon that evidence. It was in proof that in 1803, Israel Ludlow, the plaintiff’s ancestor, was in possession of the premises, claiming them as his own; that he died in 1804, leaving the plaintiffs, his children, and heirs at law, all minors; that the administrators of his estate paid the taxes out of the funds of the estate, and, in 1812, sold the, premises as the property of the estate, in their character of administrators, to the defendant, and put him in possession, the.plaintiffs then being minors.
The doctrine is now too well settled to be disturbed, that a prior possession is presumptive evidence of title; and unexplained or uncontradicted, is a sufficient title to recover upon, in ejectment, against a mere intruder. The authorities upon this point are numerous and decisive, both in the English and American courts. It is not necessary that there *should be a continued posses- [255 sion for twenty years, to furnish this presumption of right. Such possession, when both adverse to all others, and continued, rises at length into a right, even against the legal owner of the fee, if once within the protection of the statute of limitations. And, when continued for less than twenty years, may prevail as a presumptive right, until rebutted by proof of prior possession, right of succession, legal title, or other evidence sufficient to defeat such presumption. In cases where no other evidence of title than possession is given by either party, the prior possession must prevail, especially when connected with an assertion of ownership, unless such prior possession has been abandoned, or the subsequent possession been continued until protected by the lapse of time and the statute of limitations.
Prior to 1803, Israel Ludlow, the ancestor of the plaintiffs, was in possession of a large tract of land of which the lot in dispute formed a part, laid out upon it, the town of Hamilton, made donations of lots, which were accepted, sold other lots to individuals, who entered and improved; and being thus in possession, Israel Ludlow, died in 1804. By his death, his estate whatever it might *240 be, in the lot in question, and his possession of it, were cast upon Ms heirs, and they are to be regarded as having the possession by virtue of the descent cast upon them. This possession, upon which, the plaintiffs relied, was not a mere constructive possession, such as «very owner of unsettled land is supposed to have; but the actual seizin, the possessio pedis of their ancestor, transferred to them by operation of law, and continued for them by the administrators, as evidenced by their acts, until the defendant entered in 1812. The charge of the court, that the possession made out in proof, by the plaintiffs, must prevail over the defendant’s subsequent possession, which was not protected by the lapse of time, and the statute of limitations, in the absence of all evidence of title in either party, was correct.
The next error complained of is, the rejection of the evidence offered by the defendant, to show a sale by the administrators to the-defendant, and a conveyance in conformity with that sale. This-evidence consisted of transcripts of certain orders made by the court. of common pleas of Hamilton ^county, in the years 1804 and 1805, authorizing the administrators of Ludlow to sell his real estate for the payment of his debts. The competency of this evidence depends upon the legality of a sale of the lot in question, under these orders. If they conferred no power to make the sale, no right could be created in the defendant, or divested out of the-plaintiffs, by it.
At the time these orders were made, there had been no state legislation, upon the subject of selling the lands of an intestate to-pay his debts; and much doubt is entertained, whether the court of common pleas, who are vested with jurisdiction of probate and testamentary matters, had authority in any case, to direct a sale of the lands of an intestate to pay his debts. If this power was vested in them, it was in virtue of the territorial law of 1795, providing “for the settlement of intestates’ estates’’ and of the jurisdiction over intestate and testamentary matters, conferred upon them by the state law of April, 1803, first organizing the judicial courts.
The law of 1795 specifies the cases, in which the orphans’ court may direct an administrator to make sale of an intestates’ real estate, and prescribes the manner of directing and effecting such sale. The terms employed in conferring this power are these: “that it shall be lawful for the administrator or administrators of such deceased, to sell and convey such part or parts of the said. *241 lands or tenements, etc., as the orphans’ court of the county, where such estate lies, shall think fit to allow, order, and direct, from time to time.” This authority is given by the law, subject to a proviso, that the orphans’ court shall* not “allow or order any intestate’s lands or tenements to be sold, before the administrator requesting the same doth exhibit two or more true and perfect inventories and conscionable appraisements of all the intestate’s personal estate whatsoever; as, also, a just and true account, upon his or her solemn oath'or affirmation, of all the intestates’ debts, which shall be then come to his or her knowledge, etc., then, and in every such case, and not otherwise, the court shall allow such administrator to make public sale of so much of the said lands as the court, upon the best computation they can make of the value thereof, shall judge necessary,” etc. The law ^further provides, that “ the court shall order so many writings, to be made by the clerk, as they shall think fit to signify, and give notice of such sales, and of the day and hour when, and the place whore, the same will be, and what lands they are, and where they lie, which notice shall be delivered to the sheriff or constable, in order to be fixed in the most public places of the county, or city, at least ten days before sale.”
If it bo admitted that the several courts of common pleas, under the state government, in 1804 and in 1805, were invested with the same power and authority over the lands of an intestate that were vested in the orphans’ court under the territorial government, by the law of'1795, the question then arises what was the extent of the po'wers conferred upon the orphans’ court? So far as the courts of common pleas were invested with jurisdiction over the subject matter upon which they may have acted, their decisions and orders are final and conclusive, if not reversed for error. They can not be impeached collaterally, nor will this court inquire whether all the statutory provisions, preliminary to making the decision or order, have been complied with. If the court of common pleas of Hamilton county were clothed with power to make an order to soli the lot in question, and in the exercise of that power have ordered it to bo sold and conveyed, their act is conclusive upon the parties. The grounds and proofs upon which they proceeded are not examinable in this case. The correctness of the opinion given, rejecting the evidence, depends upon these two question : Had the *242 court jurisdiction ovex* the subject matter? Have they exercised that jurisdiction?
By the law of 1795 the power over an intestate’s real estate is in express terms limited to the lands within the county where the court is. “ The orphans’ court of the county whore the estate lies” is authorized to allow or oi’der a sale. The “estate” previously mentioned in this section, and the only one to which the terms “ such estate ” can apply, is the lands and tenements which the administrator may be authorized to sell and convoy. This authority is to be conferred by the orphans’ court, and its exercise is limited to lands within the county where the court sits. The power, or what is but another mode of expressing the *same thing, the jurisdiction of the orphans’ court over the lands of an intestate, is thus limited, in express terms, by the law creating it, to “such estate,” that is, such lands and tenements as lie in the county. It can by no safe rule of construction be extended to gi’anting administrators authority to sell the intestate’s lands wherever they maybe situate. Administration might have been taken out in a county where the intestate had no lands, although he owned a lai’ge real estate in other and distant parts of the state. In such a case the court possessed no competent means of ascertaining the various facts which they are required by law to ascertain, in making the oi'der for sale, except by ex parte affidavits. They could make no computation of value’upon safe grounds; they could not know what was the most profitable part of the estate,.to reserve it; they could exercise no control over the ministerial officer required to give the notice. The terms of the law confine the court to estates within the county; the obvious policy of the law calls for the same restriction.
It is argued that the term “estate” embraces all the land of the intestate, wherever situate, and that the orphans’ court of the county whore pai't of it lies is authorized to proceed upon the whole as one entire thing, especially the orphans’ court of the county where the intestate resided and made his home. This construction would be adopting a flimsy fiction to control a plain and palpable fact. The real estate of an intestate consists of as many distinct estates as he owned separate parcels of laud. His estate, though joint, or entii’e in the whole, is separate and divisible in the parts. The law in question so treats it, for it directs a *243 sale of so much of said lands, and directs a reservation, till the last, of the “ most profitable part of the estate,” thus parting the estate in express terms.
Another objection to this construction is that where the mansion-house was in one county and the principal but least profitable part of the estate in another county, thé power to direct a sale might be vested in the court of a county where none of the lands sold would lie, because the lands situate in other counties would sell for a sum sufficient to discharge the debts.
*The orphans’ courts were peculiarly domestic. They were established in each county, and were supposed to, as they did in fact, possess peculiar facilities for acquiring correct information of the condition of intestates’ estates, within their jurisdiction. Much was intended to-be confided to their discretion, because their proceedings were ex parte, and, in most cases, operated upon and affected the rights of infants. They were not.empowered to control the title to intestates’ lands, without the county, for the reasons already stated. Their jurisdiction was sufficiently broad, when allowed, upon ex parte application, to control the sales of lands within their county, without adopting a forced construction, against the plain and obvious meaning of the words of' the law, to extend that jurisdiction over all the lands of an intestate within the state. We are satisfied it was not the intention of the law of 1795 thus to extend the power of the orphans’ court; and that by no just interpretation, can it be made to give them jurisdiction over lands out of the county in which they acted.
The property in controversy was not situate in Hamilton county; the title to it could not be affected by any order made in the orphans’ court of that county, had such order expressly contained authority to sell it. Whore there is no legal power, an attempt to act can be followed by no legal consequence. But the orders are in general terms, and as the court had clearly no jurisdiction, except over land in Hamilton county, we are bound to suppose that there was no intention to extend it beyond that county. This construction is perfectly consistent with the terms of the orders. Full effect is given to them, without including any lands but those within the county; and we avoid the conclusion that the court undertook or intended to transcend their jurisdiction. In this view of the case, we consider that the orders for the sale offered in evidence, did not *244 extend to the lot in question, and consequently there was no error in rejecting them.
The validity of the orders, for any purpose, and the effect of subsequent laws upon them, which have been discussed in the arguments, are thus rendered immaterial to the decision of this case, and, for the reasons assigned in the commencement of this opinion, have not been considered.
The motion for a new trial is overruled.